HON. HOYT H. WHEELER, ⎱
HON. TIMOTHY P. REDFIELD, ⎰ ASSISTANT JUDGES.
HON. JONATHAN ROSS,

---

THE TOWN OF BALTIMORE *v.* THE TOWN OF CHESTER.

### *Pauper.*

Real estate held *jure uxoris*, is not held in the husband's *own right*, as our statutes now are, within the meaning of the fourth subdivision of § 1, ch. 19, of the Gen. Sts., which provides that every person of full age, who shall reside in any town in this state, and whose ratable estate *held in his own right*, the percentage of the value of which, besides his poll, shall be set in the list of such town at the sum of three dollars or upwards, for five years in succession, shall thereby gain a settlement in such town.

THIS was an appeal from an order of removal of one Daniel Locke, a pauper, from Baltimore to Chester. The following facts were agreed upon :-

"The pauper, some twelve years ago, being then of full age, removed to Chester, and married a woman who owned real estate

in Chester in her own right in fee simple ; and from the time of the marriage the pauper and his wife resided in Chester, on said estate, managing it themselves. The percentage of the value of said estate, besides the pauper's poll, was set in the list of said town to said pauper, at the sum of upwards of three dollars for five years and more in succession, and he paid the taxes thereon. The pauper and his wife resided in Chester for more than ten years from their marriage, when the wife died. The pauper, after his wife's death, removed to Baltimore, and became chargeable to Baltimore as a pauper. The only question in the case is, did the pauper hold said real estate in his own right, within the purview of ch. 19, § 1, division 4, of the Gen. Sts. The pauper never had any settlement in this state, unless he acquired one in Chester as above stated. The pauper had no other interest in said estate except what he acquired by virtue of the marriage."

Upon the foregoing facts, the court, at the December term, 1874, BARRETT, J., presiding, rendered judgment, *pro forma*, that the pauper was unduly removed ; to which the plaintiff excepted.

*Wm. M. Pingry*, for the plaintiff.

By the marriage, Locke, the pauper, acquired an estate of freehold in his wife's real estate, for the joint lives of himself and wife ; which estate, during its existence, he held in his own right. Slade's Sts. ch. 28, § 3 ; Rev. Sts. ch. 42, § 15 ; *Mattocks* v. *Stearns and wife*, 9 Vt. 326, 335 ; *Hyde* v. *Barney*, 17 Vt. 280.

*Luther Adams*, for the defendant.

This case presents only one question, to wit, has the pauper gained a legal settlement in the town of Chester, by virtue of the 4th clause of § 1, ch. 19, of the Gen. Sts ? The defendant claims that the pauper has not gained a settlement under that clause. *First.* Because he does not come within its terms. *Second.* Because the case is not within the meaning, spirit, and intent of the act. It has long since been settled in this state, that when one town undertakes to relieve itself from the support of a pauper, and to cast the burden upon some other town, it must show the case within the exact terms of the statute—to bring it within its spirit and meaning is not sufficient. *Manchester* v. *Dorset*, 14 Vt. 224. Similar language has been used from time to time, in

these pauper cases, by many other of our eminent judges. *Middletown* v. *Poultney*, 2 Vt. 437 ; *Wheelock* v. *Lyndon*, 6 Vt. 524 ; *Castleton* v. *Miner et al.* 8 Vt. 209 ; *Pawlet* v. *Sandgate*, 17 Vt. 619 ; *Sutton* v. *Burke*, 15 Vt. 720 ; *Albany* v. *Derby*, 30 Vt. 718 ; *Wilmington* v. *Somerset*, 35 Vt. 232 ; *Jaffrey* v. *Cornish*, 10 N. H. 505.

The statute says the pauper must hold the estate set in the list, "in his own right." This case finds that the pauper held the estate set in the list, *in right of his wife*. *Dummerston* v. *Newfane*, 37 Vt. 9 ; *Newfane* v. *Dummerston*, 34 Vt. 184.

The case does not come within the spirit and meaning of the act. The plain meaning of the act is, that the person shall own the estate set in the list, absolutely, and a qualified ownership does not meet the requirement of the statute.

The opinion of the court was delivered by

ROSS, J. The only question involved in the decision of this case is, whether the pauper, Daniel Locke, acquired a settlement in the town of Chester by residing with his wife on real estate in that town which she owned in her own right in fee simple, the percentage value of which was more than three dollars, and which was set in the grand list of said town to the pauper more than five successive years prior to his becoming chargeable to the plaintiff town. Did such occupancy and ownership of the real estate, and assessment of taxes thereon, give him a legal settlement in the town of Chester under the 4th division of § 1, ch. 19, of the Gen. Sts. ? That division of the statute reads : " Every person of full age, who shall reside in any town in this state, and whose ratable estate held in his own right, the percentage of the value of which, besides his poll, shall be set in the list of such town at the sum of three dollars, or upwards, for five years in succession, shall thereby gain a settlement in such town." The pauper had ratable estate set to him in the list five years in succession, the percentage value of which was sufficient to answer the requirements of the statute. If it was " estate held in his own right," within the meaning of the statute, he acquired a legal settlement in the town of Chester. All the right which he had

in or to the estate, was that which the law conferred upon him by virtue of his marriage to the owner of the fee thereof. By the common law, this relation gave him the entire right to the use of his wife's real estate during their joint lives, and if issue were born to them alive, there was added the use during the remainder of his life, if he should survive his wife. To this extent, it was an estate which he held in his own right, as absolutely as though the same had been conveyed by deed, so long as the marriage relation subsisted. He could convey it. Under our former statutes, it could be taken in satisfaction of his debts. Only his life estate could be so taken or conveyed. *Mattocks* v. *Stearns & wife*, 9 Vt. 336 ; *Hyde* v. *Barney*, 17 Vt. 280. At his decease, if she survived him, the full estate reverted to her ; if she did not survive him, and there were children born alive, to her heirs. Our statutes have largely abridged the estate which the husband takes in the wife's real estate by virtue of the marriage. His creditors cannot now take the husband's interest in the wife's real estate, in satisfaction of his debts, unless created for necessaries for the wife and family, or for labor and materials for its cultivation and improvement, and for the satisfaction of these debts, only the annual products can be taken. He cannot during coverture convey any interest in her real estate by his separate deed. If he abandon her, or by ill treatment give her cause to live separate and apart from him, she may recover her real estate to her sole use and benefit. Ch. 71, Gen. Sts. In short, for more than twenty years last past, it can hardly be said that the husband has had, under the statutes, any separate estate in the real estate of his wife during her life. What interest the statute has left in him, it has placed in him jointly with the wife, during her life, to be held and used for their joint benefit. In § 18, ch. 71, the husband's interest in the wife's real estate is spoken of as " the interest of her husband in her right." Is this estate, interest, or right of the husband in his wife's real estate, acquired by virtue of the marriage, " estate held in his own right," within the meaning of the statutes before quoted ? The defendant claims that it is ; claims that this court decided in *Mattocks* v. *Stearns & wife*, and other cases, that the husband " held in his own right," at

common law, an estate in the wife's land during coverture, and that the statutes have not materially modified the character of this estate. We have no occasion to question the soundness of those decisions. The statute under which those decisions were made, allowed the creditor to take on execution in satisfaction of a judgment debt, " all houses, lands, and tenements belonging to " his debtor " in his or her own right in fee, or for his own life, or the life of another, paying no rents for the same." At that time, under the common law, the husband acquired a life estate in the real estate of his wife, by virtue of the marriage. This estate he unquestionably held in his own right. Only this estate was taken in satisfaction of the execution against the husband. If the creditor, in the levy and set-off on the execution, could not have separated the husband's life estate from the reversion—and could have taken the former only in connection with the latter—can it be doubted that the court would have decided that " houses, lands, and tenements," the title to which was in the wife, did not belong to the husband in his own right ? We think not. For the purposes of taxation, the law provides no method by which the husband's interest in the wife's real estate can be taxed to him, and her interest to her. " The percentage of the value " is, theoretically, the percentage of the entire value of the real estate. It covers the percentage of the value of both the husband's interest and the wife's interest in such estate. The percentage of the value of her interest in such real estate may be, and often is, very large, compared with the percentage of the value of his interest. When the percentage of the value of the interest of both is three dollars or upwards, the percentage of the value of his interest may, and most generally would be, but a small fraction of three dollars. For the purposes of taxation, the wife's real estate is not, though rated to him, ratable estate held exclusively in the husband's own right. Much more frequently the larger value in such estate is held by the wife, and in her own right. The statute provisions for the settlement of paupers are arbitrary, and are to be strictly construed. We think " the percentage of the value " spoken of in the division of the statute under consideration, where the person rated with the

estate owns less than the entire interest, can be extended only to the percentage of the value of such interest as the person holds in his own right in the property taxed. The settlement, under this division of the statute, is acquired solely by a property qualification. The minimum limit of such qualification is given by the statute. If we should adopt the views of the defendant, a property qualification very much less in value, held in his own right, would suffice to confer a settlement on a man where the title to the real estate is in his wife, than would suffice if the title were in himself. · Such holding would be consonant with neither the language nor the reason of the statute.

　　Judgment affirmed.